

**SO ORDERED.**

**SIGNED this 6 day of August, 2020.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:

CHRISTOPHER S. HARRISON,                    CASE NO. 19-05730-5-SWH
  DEBTOR.                                   CHAPTER 11

SUPPLEMENTAL OPINION REGARDING
APPOINTMENT OF CHAPTER 11 TRUSTEE

This matter come on to be heard upon the Emergency Motion for Entry of an Order Appointing Chapter 11 Trustee filed by Mouzon Bass III, Ebenconcepts, Inc., Orchestrate Hr, Inc., Vivature, Inc., and Vologic, Inc. (the "Bass Parties") on June 5, 2020. Hearings were held in Raleigh, North Carolina on June 16, 17, 19, 2020. The court took the matter under advisement at the conclusion of the hearing. On June 24, 2020, the court entered an Order Appointing Chapter 11 Trustee, pursuant to § 1104(a), which provided that the specific grounds for the appointment of the chapter 11 trustee would be set forth in a later supplemental full opinion.

The debtor, Christopher S. Harrison, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 13, 2019 (the "Petition Date"). An initial § 341 meeting

was conducted in the case on January 22, 2020 (the "Initial 341 Meeting") and at a continued § 341 meeting on May 13, 2020 ("Continued 341 Meeting").

The debtor filed his Schedules and Statements of Financial Affairs on December 23, 2019. They were amended on January 7, 2020 and again on January 21, 2020, March 10, 2020, and March 30, 2020.

By order dated December 16, 2019, the debtor was directed to file a plan and disclosure statement by March 13, 2021. The due date for the filing of a plan and disclosure statement was later amended to March 12, 2020 by order dated December 19, 2019. The debtor sought and received additional extensions to file a plan and disclosure statement until August 11, 2020. The debtor ultimately filed his Plan and Disclosure Statement on June 12, 2020.

On June 5, 2020, the Bass Parties filed an Emergency Motion to Appoint Trustee (DE #187). The debtor filed a Response on June 16, 2020 (DE #206).

## DISCUSSION

Section 1104(a) provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a) (2018). This court has previously discussed the applicable standard for

2

appointing a trustee:

> "The appointment of a trustee in a chapter 11 case is an extraordinary remedy, and there is a strong presumption in favor of allowing the debtor to remain in possession." *In re Tanglewood Farms, Inc.*, No. 10-06719, 2011 Bankr. LEXIS 624, 2011 WL 606820, at *2 (Bankr. E.D.N.C. Feb. 10, 2011) (citing *In re Heck's Properties, Inc.*, 151 B.R. 739, 756 (S.D. W. Va. 1992)); *In re Taub*, 427 B.R. 208, 225 (Bankr. E.D.N.Y. 2010) ("The appointment of a trustee is an unusual remedy and '[t]he standard for § 1104 appointment is very high . . . .'" (quoting *Adams v. Marwil (In re Bayou Grp., LLC)*, 564 F.3d 541, 546 (2d Cir. 2009))). Because "appointment of a trustee should be the exception, rather than the rule[,]" *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225-26 (3d Cir. 1989) (citations omitted), the movant must demonstrate, by clear and convincing evidence, the grounds for appointment of a trustee under both subsections of § 1104(a). *Tanglewood Farms*, 2011 Bankr. LEXIS 624, 2011 WL 60820, at *2; *see In re LHC, LLC*, 497 B.R. 281, 291 (Bankr. N.D. Ill. 2013) ("Applying the clear and convincing evidence standard appears . . . to be more consistent with the presumptions that a debtor should generally be permitted to remain in control and possession of its business and that the appointment of a Chapter 11 trustee is an extraordinary remedy." (citation omitted)).

*In re Bergeron*, No. 13-02912-8-SWH, 2013 Bankr. LEXIS 4556, at *19-20 (Bankr. E.D.N.C. Oct. 31, 2013). The court has discretion to determine if the debtor's conduct constitutes cause for the appointment of a trustee. *Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc.*, 828 F.2d 239, 242 (4th Cir. 1987).

At the hearings held on the Motion, the testimony of the debtor, the testimony of Patrick George Adams, and many documents were received into evidence. At trial, the debtor attempted to explain both his pre- and post- petition behavior. His willingness to offer explanations and even apologies have been taken into consideration by the court, but cannot offset the clear and convincing evidence of both cause for appointment of a trustee and a finding and conclusion that such appointment would be in the best interests of the creditors and the estate.

The Bass Parties have alleged that both the debtor's pre-petition and post-petition conduct warrant the appointment of a trustee. This court and others have held that more focus and weight

3

should be given to post-petition conduct when analyzing the propriety of appointing a trustee. *In re Bergeron*, No. 13-02912-8-SWH, 2013 Bankr. LEXIS 4556, at *23-24 (Bankr. E.D.N.C. Oct. 31, 2013) (quoting *1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007)) (citations omitted).  The debtor maintains that his post-petition behavior has been exemplary, and the fact that the debtor has not "lived large" post-petition should carry the day.  The court does not agree with the debtor's characterization of his post-petition conduct.  Additionally, even if the post-petition "irregularities" and "deficiencies" recited by the Bass Parties *might*[1] not, in and of themselves, constitute grounds for the appointment of a trustee, when coupled with the pre-petition "list of horribles" alleged by the Bass Parties and shown at trial, the conclusion that the appointment of a trustee is in the best interest of creditors and warranted for cause, is inescapable.

POST-PETITION CONDUCT

The Bass Parties recite the following post-petition conduct in support of their motion:

1. Failure to file accurate and honest Schedules and Statements of Financial Affairs;

2. Delay in amending Schedules and Statements of Financial Affairs to accurately and honestly depict his financial situation;

3. Delay in amending tax returns, including delay in providing important information to professionals retained by the debtor;

4. Failure to timely and fully comply with Rule 2004 requests;

5. Failure to honestly, accurately, and credibly testify at his 341 meetings; and

6. Reluctance to pursue avoidance and recovery actions against friends and family members.

---

[1] To be clear, the court makes no finding that the post-petition conduct would **not** support the appointment of a trustee.

4

The debtor sought and obtained a 2-week extension to file his Schedules and Statements of Financial Affairs and amended those documents 4 times prior to trial. However, the debtor never fully, timely and accurately amended his Schedules and Statements of Financial Affairs through the date of the hearings. This is especially significant because the primary purpose of this chapter 11 is to deal with the impending multi-million-dollar income tax liability of the debtor. The debtor should have been fully aware of the necessity to accurately reflect his financial situation on his bankruptcy pleadings at the onset of the case. That information is vital in any bankruptcy case, but particularly here. Unannotated entries of "Unknown" and "Various" do not satisfy a debtor's obligation to be honest, forthcoming, and credible. For instance, a debtor may not have exact numbers or may still be attempting to derive those numbers, but an asterisk and explanation can go a long way to alert creditors of what may be a changing financial landscape. Given the opportunity at both his Initial and Continued 341 Meetings to offer an explanation for the deficiencies in his Schedules and Statements of Financial Affairs, signed under penalty of perjury, the debtor simply responded that he believed them to be accurate and no more, all while again under oath and most importantly, when he KNEW them to be inaccurate and KNEW them to be in need of amending and/or updating. Initial 341 Meeting p. 20, Continued 341 Meeting, p. 76. It is simply incredulous that given the opportunity to reveal additional information orally, the debtor did not "remember" the $137,000 Cartier necklace purchased less than nine months before, as well as the over $2.5 million in jewelry purchased within recent years, his loans to Marshall Warren, the issues with vastly understated income reporting, his additional company credit card usage, his Carolina Panthers bond, and his over three million American Express points that he had just converted to gift cards. Even assuming temporary amnesia (on at least two occasions), not getting

5

your "ducks in line" for a 341 meeting indicates business and personal incompetence and mismanagement. The debtor testified that he was "still going through new credit card statements" to determine personal expenses that had been improperly paid by the company. The court suggests that in light of his looming significant tax liability, <u>all</u> of the debtor's time should have been allocated to that task since the Fall of 2019. The court wonders how the debtor slept not knowing the extent of his debt to the "tax man," but detected no sense of urgency or understanding of how serious his derelictions were.

<u>PRE-PETITION CONDUCT</u>

The plain language of section 1104(a)(1) allows the court to consider the pre-petition conduct of the debtor in determining whether the appointment of a trustee is appropriate. The pre-petition conduct of the debtor clearly and unequivocally supports a finding of cause – at a minimum, on the basis of incompetence and gross mismanagement, and under the worst construction, on the basis of fraud or dishonesty – for the appointment of a trustee:

1. The debtor filed tax returns for the years 2013 to 2019 which grossly underestimated his income and resulted in substantial underpayment of income taxes (Exhibit OO).

2. The debtor regularly caused transfers to be made from Ebenconcepts to him for the payment of his own personal expenses without appropriately accounting for such transfers on the books and records of Ebenconcepts. Additionally, he was transferred large amounts of cash from Ebenconcepts through ACH several times a year which were not reported as income. As a result, Ebenconcepts understated its income and is subject to tax payment deficiencies and possible fines and penalties. The evidence tends to show that the amount of these misapplied expenses totaled between $24 million

6

and $28.5 million (Exhibit PP). The debtor's explanation: he thought the CPAs would come in "later" and provide a reconciliation, and that he had not "contemplated" how large the unreported income number had become.

3. The debtor testified that he knew his income was understated at the time he submitted his W-2s and filed his income tax returns. The debtor acknowledged that he received income from CNM and that no W2s had been issued for 2019 for that company.

4. In September 2019, the debtor purchased a $137,000 necklace for his wife in New York City, transported it back to North Carolina and has since kept it in North Carolina at his residence with no insurance. The funds to pay for the necklace were obtained from Ebenconcepts when his personal credit card charges (for which he retained millions of points for his personal use) were paid by the company. The debtor did not direct that the expense be accounted for as income or a loan to him and no accounting was made for the personal nature of the expense. The debtor also paid for his home outdoor pool in an amount in excess of $300,000 with funds transferred directly from Ebenconcepts with no proper accounting. Instead, all personal expenses were coded as either "travel" or "office" expense on the company's financials.

5. The debtor purchased over $2.2 million in jewelry within 4 years of filing for bankruptcy and did not insure the jewelry. Ironically (and incredibly), the debtor was only able to remember jewelry expenditures between May and December 2019 of between $20,000 to $25,000 when asked that question at his 341 meeting, despite having received large purchase notices from American Express much in excess of those numbers. Initial 341 Meeting, p. 53-54.

7

6. While the debtor served as President, CEO, and majority shareholder of Ebenconcepts, the bookkeeper, Sabrina Hooten, embezzled $1.9 million from that company, constituting gross mismanagement of a company in which he served as a fiduciary.

7. He converted 3,456,798 Platinum Card membership points from a card paid for by Ebenconcepts to buy Christmas gifts during the month he filed for bankruptcy.

The debtor testified that he was earnestly trying to reconcile his tax situation and make amends to the IRS and his creditors. However earnest the debtor may be, the court sees it as much too little, much too late. Cause certainly exists for the appointment of a trustee.

Furthermore, it is in the best interests of the estate and creditors that a trustee be appointed. The vast majority of property that could be used to satisfy the claims of creditors is presently in the possession and/or control of the debtor's wife: jewelry and real property. There is an inherent reluctance of a debtor to sue his wife to regain possession of and liquidate her property, notwithstanding, his testimony that he would ask her to do so and that she agreed to return some jewelry. She did not testify at trial nor did she sign the Plan. The Plan does not provide for the recovery of the property from the debtor's wife. Instead, the Plan sets out a means for execution that is based largely on the sale of the debtor's interest in Ebenconcepts—relying on a disputed valuation of such interest—and possible recovery from an avoidance action against Ebenconcepts that is being investigated. The Plan as filed shows no present intent on the part of the debtor to devote the recovery of valuable property in the hands of his wife to the payment of his creditors. The objective analysis of a trustee is therefore necessary because the chapter 11 process with the debtor remaining at the helm under the circumstances is insufficient to protect the estate and creditors. *In re Daily*, No. 309-05337, 2009 Bankr. LEXIS 3337, 2009 WL 3415204, at *3 (Bankr.

M.D. Tenn. Oct. 19, 2009).

For the reasons stated above, the appointment of a trustee is warranted.

**END OF DOCUMENT**