**SO ORDERED**

SIGNED this 20 day of September, 2022.

_____
Pamela W. McAfee
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## FAYETTEVILLE DIVISION

IN RE:

CHRISTOPHER S. HARRISON

DEBTOR

CASE NO.
19-05730-5-PWM
CHAPTER 7

### ORDER REGARDING MOTION FOR RELIEF FROM STAY

The matter before the court is the motion for relief from stay filed by EbenConcepts Company a/k/a EbenConcepts, Inc. ("EbenConcepts"), in which EbenConcepts seeks a determination that the automatic stay does not apply to the corporate action it seeks to undertake, and, in the alternative, relief from the automatic stay, D.E. 994 (the "Motion"). Responses in opposition were filed by the chapter 7 debtor, Christopher S. Harrison, D.E. 1001, and by the chapter 7 trustee, Holmes P. Harden ("the Trustee"), D.E. 1002. A hearing took place in Raleigh, North Carolina on September 7, 2022, after which the court took the matter under advisement. For the reasons that follow, the court finds that the automatic stay does not apply to the narrow action addressed by the Motion.

## BACKGROUND

Christopher S. Harrison filed a petition for relief under chapter 11 of the Bankruptcy Code on December 13, 2019 (the "Petition Date"). On June 24, 2020, the Trustee was appointed as chapter 11 trustee, and on August 26, 2020, the Trustee filed a motion to convert the case to one under chapter 7. The case was converted to chapter 7 and the Trustee was appointed as chapter 7 trustee on September 22, 2020.

EbenConcepts is a Texas corporation with its principal place of business in Dallas, Texas.[1] Prior to the Petition Date, Mr. Harrison was the holder of 2,372 of the 10,000 authorized and issued shares of EbenConcepts. Those shares are now an asset of the chapter 7 estate. The remaining shares are held by Mouzon Bass III (7,118 shares) and Nancy Bass (510 shares). Mr. Bass is the president and sole director of EbenConcepts.

According to the Motion, on July 29, 2022, Mr. Bass, as sole member of the Board of Directors of EbenConcepts, executed a "Consent of Directors in Lieu of Special Meeting" adopting a corporate resolution, subject to approval of the shareholders, approving an amendment to

---

[1] While not directly related to the Motion, the relationship between EbenConcepts and Mr. Harrison does shed some light on the motivations and attitudes of the parties. From December 31, 2010 to September 24, 2019, Mr. Harrison was an employee, the majority shareholder, and the only officer authorized to act on behalf of EbenConcepts. While operating the company, Mr. Harrison used millions of dollars of corporate funds for personal expenses while mischaracterizing or omitting those expenditures on EbenConcepts' books and records. Among the myriad of consequences to EbenConcepts were underestimation of its retained earnings, depletion of its operating account, and depletion of resources that would otherwise have been available to reinvest in the company or to apply to other expenses. Among the consequences to Mr. Harrison was significantly underreported income, the exposure of which resulted in millions of dollars in tax liability constituting priority claims in the bankruptcy case.
   On January 5, 2022, Judge Stephani W. Humrickhouse determined that the debt Mr. Harrison owed to EbenConcepts in the amount of $31,014,517.46 was incurred through fraud and embezzlement and, as a result, was nondischargeable. *See EbenConcepts, Inc. v. Harrison (In re Harrison)*, Adv. Pro. No. 21-0006-5-PWM, D.E. 38, 39 (Bankr. E.D.N.C. Jan. 5, 2022) (currently on appeal).

EbenConcepts' Articles of Incorporation to increase the aggregate number of authorized shares of common stock from 10,000 to 1,000,000. The same day, EbenConcepts issued a "Notice of Special Meeting of Shareholders of EbenConcepts Company" to take place on August 1, 2022 in Dallas, Texas.

There is disagreement as to whether the Trustee received official notice from EbenConcepts of the proposed meeting and action, but it is uncontroverted that the Trustee became aware of the intended action prior to the scheduled meeting date through both an email from counsel for EbenConcepts and email receipt of the official notice from Mr. Harrison's counsel. In response to the noticed meeting, the Trustee, through counsel, advised EbenConcepts that he viewed the actions already taken – *i.e.*, Mr. Bass's execution of the Consent of Directors in Lieu of Special Meeting – to constitute an effort to exercise control over property of the estate in violation of the automatic stay, 11 U.S.C. § 362(a)(3), and warned that any further action, including convening the shareholders meeting, would be a continued violation of the automatic stay subject to sanctions. The Trustee indicated further that other relief could and would be pursued under both Texas law and bankruptcy law should EbenConcepts move forward with the proposed actions.

The Motion was prompted by, and is responsive to, the communication from the Trustee. In it, EbenConcepts contends that its actions are not stayed by § 362(a), and alternatively that if they are, it is entitled to relief from the stay under § 362(d) to move forward with the proposed amendments to its Articles of Incorporation. EbenConcepts emphasizes that the only action it seeks to take is to amend the Articles to *authoriz*e the issuance of additional shares, which it maintains would be necessary in the event EbenConcepts sought, in the future, to raise capital. EbenConcepts specified in its Motion and at the hearing that it *does not* seek to actually issue the shares,

3

emphasizing that the only corporate action being undertaken would be to convene a shareholders' meeting and take the necessary steps to amend the Articles of Incorporation, as to which there is no basis on which the automatic stay would apply. EbenConcepts sees this issue as separate and distinct from the question of whether an actual issuance of the shares, necessarily diluting the estate's interest in EbenConcepts, would be stayed by § 362(a).

The Trustee contends that dilution of the estate's interest through *issuance* of additional shares would clearly constitute the exercise of control over property of the estate; with that in mind, he argues that by extension, the initial proposed amendment to the Articles of Incorporation to authorize such an issuance necessarily could have a chilling effect on a third-party buyer for the shares, as a potential buyer would understand the risk that its interest could be diluted from 23.5% to less than one percent. This direct action by the corporation, according to the Trustee, thereby impacts the alienability of an asset of the estate.

## DISCUSSION

Section 362(a)(3) of the Bankruptcy Code provides that the filing of a petition for relief operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3). As noted above, the Trustee maintains that an act that would directly impact the value of property of the estate falls within the terms of this prohibition, while EbenConcepts contends that it seeks to take only an action of corporate governance, which cannot fall within the automatic stay.

In support of its argument, EbenConcepts cites to *In re SS Body Armor I, Inc.*, 527 B.R. 597 (Bankr. D. Del. 2015). In *SS Body Armor*, a shareholder of the corporate debtor sought a determination that his effort to compel a shareholders' meeting under Delaware law would not violate the automatic stay. While the shareholder did not assert a specific reason for requesting a

4

shareholder meeting, he did argue that the requested shareholder meeting would not deplete the debtor's assets. The debtor, on the other hand, contended that the shareholder intended to elect a new board of directors that would abandon the course for reorganization established by the debtor and that the action would seriously threaten the debtor's prospect of reorganization.

After a careful review of precedent within the Second Circuit, Judge Sontchi determined that the automatic stay does not preclude calling a shareholder meeting. He cautioned that "[t]he right to such a meeting, however, is not unfettered." 527 B.R. at 607. A bankruptcy court "may enjoin the occurrence of a shareholder meeting as well as the implementation of the results of such a meeting when there is 'clear abuse,' in other words, a showing of delay and real jeopardy to a debtor's reorganization." *Id.* Significantly, while noting that there was "an argument to be made that clear abuse may be present" in the case, Judge Sontchi denied any immediate relief to the debtor because the proper procedural vehicle for opposing the shareholder's request was not application of the automatic stay, but rather an adversary proceeding and a motion for an injunction. *Id.*

The Trustee, on the other hand, relies on *Bank of America, N.A. v. Veluchamy (In re Veluchamy)*, 535 B.R. 783 (N.D. Ill. 2015), *aff'd*, 879 F.3d 808 (7th Cir. 2018), in which the individual debtors, in their capacity as majority shareholders of a closely held corporation, caused the corporation to implement a stock split that resulted in the debtors' children becoming the majority owners of the company. The issue before the court was whether the transfer of the majority interest in the company through the stock dilution constituted a transfer of property of the estate for purposes of § 548(a). The bankruptcy court, as affirmed by the district court and the

Court of Appeals for the Seventh Circuit,[2] found that that it did. On appeal, noting the dearth of case law addressing the question, the district court observed that other courts had found fraudulent transfer liability in similar situations, citing specifically *In re Powers*, Adv. No. 87-0388-H3, 1990 WL 290210, at *12 (S.D. Tex. Oct. 18, 1990) (transfer of 1,000 shares "watered" the debtor's stock by 22.5%), *aff'd*, 979 F.2d 1533 (5th Cir. 1992), and *In re Dreiling*, 233 B.R. 848, 876 (Bankr. D. Colo. 1999) (diminution of value through issuance of stock "no less real" than if debtor conveyed ownership of the trustee's stock). The *Veluchamy* court further observed that it was "unaware of any bankruptcy case that holds that internal stock dilutions of [a] closely held corporation are a legitimate method to transfer assets away from an estate." *Veluchamy*, 535 B.R. at 794.

Upon full review of the parties' arguments and memoranda, the court agrees with the reasoning set out in *SS Body Armor* and the authorities cited therein, which demonstrate that the automatic stay does not apply to the limited action EbenConcepts seeks to take, as articulated in its Motion – that being *the amendment of its Articles of Incorporation to authorize* the issuance of additional shares, and nothing more. If, as was the case in *SS Body Armor*, an effort to replace the board of directors of a corporate debtor is not an effort to take control over property of the estate (or, seemingly, control over the debtor itself), then *a fortiori* an amendment to the articles of a non-debtor corporation cannot be an effort to control the estate's minority shareholder. The Trustee has offered no authority sufficient to support a contrary conclusion.

Finally, the Trustee's expressed concern that the amendment might chill a third-party purchaser of the shares (which is the only identified direct effect on property of the estate) is

---

[2] The finding that the issuance of additional stock was a fraudulent transfer was not challenged in the appeal from the district court to the Court of Appeals for the Seventh Circuit. 879 F.3d at 822.

speculative. While the court does not have the Articles of Incorporation in evidence, presumably the proposed action can be approved without the consent of all of the shareholders – meaning that a minority shareholder is *always* subject to the possibility that the Articles will be amended and additional shares authorized. That does not mean that a minority shareholder is without recourse when corporate action (or inaction) gives rise to a grievance: the state law fiduciary obligations of a majority shareholder, together with state law remedies for violations of those obligations, ensure protection for minority shareholders including both the Trustee and any purchaser in the event that EbenConcepts ultimately takes any action negatively impacting the minority interest. Those tools are available independently of the automatic stay.

In short, the court agrees with Judge Sontchi that the relief sought by the Trustee through his opposition to the Motion is not available through application of the automatic stay. The question of whether EbenConcepts may *actually issue* any newly-authorized shares without running afoul of the automatic stay is not before the court,[3] but if in the future it is, the Trustee may seek relief through appropriate procedures as he deems necessary.[4] Whether any further action is barred by the automatic stay, subject to other injunctive relief, or avoidable through the chapter 5 powers of the Trustee is a question for another day.

---

[3] The reasoning in *Veluchamy* supports the argument that an actual issuance of shares that dilutes the estate's interest would constitute a transfer of property of the estate. *See also In re Lee*, 524 B.R. 798, 803–04 (Bankr. S.D. Ind. 2014), *aff'd sub nom. Lee Grp. Holding Co., LLC v. Walro*, No. 12-900007-JJG-7A, 2015 WL 4724944 (S.D. Ind. Aug. 10, 2015) (holding that termination of membership and voting rights in LLC violated § 362(a)(3)).

[4] The availability of other relief where the automatic stay is inapplicable is supported in the Fourth Circuit by the decisions in *Biltmore Invs., Ltd. v. TD Bank, N.A.*, 626 Fed. Appx. 390 (4th Cir. 2015) and, on remand, 2016 U.S. Dist. LEXIS 565 (W.D.N.C Jan. 4, 2016). There, the Court of Appeals for the Fourth Circuit found that although the automatic stay terminated upon confirmation of the debtor's chapter 11 plan, injunctive relief might be available where the bank sought to execute on the shares of the corporate debtor's sole shareholder and the ultimate holder might not act in the best interests of the debtor.

## CONCLUSION

Based on the foregoing, the court concludes that the automatic stay is inapplicable to the limited action identified by EbenConcepts, and consequently the motion to determine that the stay does not apply is ALLOWED.

**END OF DOCUMENT**